IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

Statia Scott, )
 ) C.A. No. 8:09-2572-HMH
     Plaintiff, )
 )
   vs. ) **OPINION AND ORDER**
 )
Eaton Corporation Long Term Disability )
Plan, )
 )
     Defendant. )

In this ERISA action,[1] Statia Scott ("Scott") challenges Eaton Corporation's ("Eaton") denial of long-term disability ("LTD") benefits under Eaton's self-insured employee benefits plan ("the Plan"). Eaton administers the Plan through the Eaton Corporation Health and Welfare Administrative Committee ("the Plan Administrator"). (R. at 46.) Scott seeks recovery of LTD benefits under the Plan pursuant to 29 U.S.C. § 1132(a)(1)(B) as well as attorney's fees and costs pursuant to 29 U.S.C. § 1132(g). (Joint Stipulation ("J.S.") ¶ 1.) The parties have filed a joint stipulation and memoranda in support of judgment pursuant to the court's Specialized Case Management Order for ERISA benefits cases. The parties agree that the court may dispose of this matter based upon the joint stipulation, memoranda in support of judgment, and any replies to dispositive motions. (Id. ¶ 8.)

---

[1] Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461.

1

The parties further agree that the court must review the Plan Administrator's denial of LTD benefits by examining whether the Plan Administrator's conclusion constitutes an abuse of discretion. (Id. ¶ 7.) Scott contends that the Plan Administrator abused its discretion in denying her claim for benefits. (Pl. Mem. Supp. J. 18-35.) Eaton counters that the Plan Administrator acted within the discretion granted by the terms of the Plan. (Def. Mem. Supp. J. 17-29.) After review, and for the reasons explained below, the court reverses Eaton's denial of LTD benefits and awards Scott LTD benefits.

## I. Factual and Procedural History

From 1996 until 1998, Scott worked for Eaton as an "assembler," which required her to wire, fit, and modify items in the manufacturing of products. (R. at 654.) On September 26, 1998, Scott ceased working due to chronic pain, reflex sympathetic dystrophy ("RSD"), anxiety, and depression. (Id. at 147.) From September 26, 1998 through March 24, 1999, Scott received short-term disability benefits pursuant to the Plan. (Id. at 146.) Beginning on March 25, 1999, the Plan Administrator approved Scott for LTD benefits under its "own occupation" definition of covered disability.[2] (Id.) On September 27, 2000, the Plan Administrator approved Scott for continued LTD benefits under the "any occupation" definition of covered disability, which the Plan defines as: "Following the first 24 months, you are totally and continuously unable to engage in any occupation or perform any work for compensation or profit for which you are, or

---

[2] The Plan defines "own occupation," in pertinent part, as: "During the first 24 months of such a disability . . . you are totally and continuously unable to perform the essential duties of your regular position with the Company, or the duties of any suitable alternative position with the Company . . . ." (R. at 146.)

2

may become, reasonably well fitted by reason of education, training or experience – at Eaton Corporation or elsewhere." (Id.)

Scott continued to receive LTD benefits for more than nine years. (R. at 146.) However, in an October 7, 2008 letter, Sedgwick CMS ("Claims Administrator"), Eaton's new Claims Administrator,[3] informed Scott that she no longer satisfied the "any occupation" definition of disability and that her LTD benefits would be terminated. (Id. at 114.) In its letter, the Claims Administrator stated that its evaluation of Scott's claim file revealed that she could perform sedentary work. (Id.) The Claims Administrator predicated its determination on a review of (1) a physical capacity evaluation form completed by Dr. David Riley ("Dr. Riley"), Scott's treating physician; (2) a teleconference between the Claims Administrator and Dr. Riley; and (3) a Transferable Skills Analysis and Labor Market Survey. (Id. at 114-15.) Eaton also submits that its initial decision to deny Scott LTD benefits was impacted in part by an August 5, 2008[4] report of a peer reviewer, Dr. Tanya C. Lumpkins ("Dr. Lumpkins"), Internal Medicine and Rheumatology specialist, who opined that Scott could perform sedentary work. (Def. Mem. Supp. J. 6.) In its termination letter, the Claims Administrator stated:

> A Physical Capacity Evaluation form completed by your physician
> Dr. Riley on 5/23/2008 resulted in a Physician Advisory Review on
> 7/23/2008 and teleconference with Dr. Riley. Your physician supports that
> you are able to do sedentary work with the restrictions and limitations to
> include no repetitive fine motor manipulation with the right hand and
> ability to change position as needed and limit sitting continuously for 30

---

[3] Sedgwick became Claims Administrator for Eaton on January 1, 2007. (Def. Mem. Supp. J. 4.)

[4] Dr. Lumpkins completed her initial report on July 23, 2008. (R. at 534.) She submitted a revised report on August 5, 2008. (Id. at 539.)

minutes.  Based on the diagnosis from Dr. Riley, his recommendations for
sedentary work with restrictions are appropriate.

(R. at 114.)  After Scott received the October 7, 2008 denial letter, Dr. Riley sent Eaton a letter on October 17, 2008, stating, in part, as follows:

> Mrs. Scott is treated for chronic pain syndrome, reflex sympathetic dystrophy, anxiety, and depression . . . .  It is my opinion, based on my treatment of Mrs. Scott's ongoing chronic health problems, that she is completely and totally disabled from performing any job on a full time basis.  The severity of her medical problems, as well as the side effects of the chronic medication that she takes, prevents her from being able to seek gainful employment.

(Id. at 517.)

On October 25, 2008, Scott formally appealed the Claims Administrator's denial of her LTD benefits.  (Id. at 118.)  Scott countered the assertion by the Claims Administrator that Dr. Riley believed she could perform sedentary work.  (Id. at 118-23.)  Scott also challenged the Transferable Skills Analysis and Labor Market Survey, contending that her prescription drugs coupled with her physical impairments precluded her from engaging in sedentary work.  (Id.)  Furthermore, Scott submitted additional medical information including progress reports from Dr. Riley noting that Scott "[c]ontinues to be totally disabled from any occupation."  (R. at 519.)  The Claims Administrator procured three peer reviewers to evaluate Scott's medical file.  (Def. Mem. Supp. J. 8.)  Dr. Saad M. Al-Shathir ("Dr. Al-Shathir"), Physical Medicine/Rehabilitation specialist; Dr. Marcus J. Goldman ("Dr. Goldman"), Psychiatry and Neurology specialist; and Dr. D. Dennis Payne, Jr. ("Dr. Payne"), Internal Medicine and Rheumatology specialist, reviewed Scott's medical file and concluded that Scott could perform sedentary work with certain restrictions.  (R. at 547-58.)  Relying on the peer reviewers' reports, the Claims Administrator

4

notified Scott on February 11, 2009, of its decision to uphold the denial of her LTD benefits. (Id. at 128-32.)

On April 23, 2009, Scott again appealed the Claims Administrator's denial of LTD benefits. (Id. at 135.) The Plan Administrator procured the Medical Review Institute of America ("MRIOA"), a medical review organization, to review Scott's file. (Id. at 565-601.) Three anonymous MRIOA reviewers, a neurologist, a psychiatrist, and a specialist in physical medicine/rehabilitation, examined Scott's file. The MRIOA reviewers concluded that Scott's impairments did not preclude her from working "any occupation" as defined by the Plan. (Def. Mem. Supp. J. 10-11.) The Plan Administrator conducted a final review of Scott's claim. (R. at 51-57.) Relying heavily on the anonymous MRIOA peer reviewers, the Plan Administrator upheld the denial of Scott's LTD benefits. (Id.) In its September 28, 2009 letter to Scott, the Plan Administrator noted:

> The substantial weight of the medical documentation provided by Ms. Scott, her treating physicians, and by the independent physician reviewers support the conclusion that as of the date her continued LTD benefits were denied, Ms. Scott was not continuously disabled from any work as required by the Plan. A Transferable Skills Analysis performed in September 2008 shows that appropriate sedentary work, given her restrictions and limitations, is available for Ms. Scott.
>
> . . . .
>
> Our determination is whether the objective medical evidence, as clinically assessed by medical professionals, substantiates Ms. Scott's claim under the terms of the Plan. It is our determination that the substantial weight of evidence shows that Ms. Scott did not meet the Plan's requirements for support of her claim as of November 1, 2008.

(Id. at 56-57.)

On October 2, 2009, after exhausting her administrative remedies, Scott filed this action. (Compl. ¶ 6.) On February 10, 2010, the parties filed a joint motion to stay litigation after the parties discovered that an affidavit from Dr. Riley had been excluded from the record before the Plan Administrator. (Order ¶ 1, Feb. 11, 2010.) The court granted the parties' joint motion on February 11, 2010, and the case was remanded to the Plan Administrator for reconsideration. (Id.) The Plan Administrator contacted MRIOA and requested that the same three anonymous reviewers reevaluate Scott's file in light of Dr. Riley's missing affidavit. (Def. Mem. Supp. J. 13-14.) In his affidavit, Dr. Riley reiterated his RSD and rheumatoid arthritis diagnoses. (R. at 562.) After describing the impact of Scott's impairments, Dr. Riley noted:

> It is my opinion, based upon my medical education and experience and based upon my specific knowledge of Ms. Scott's problems and treatment history that she is and has been completely and totally disabled from performing any occupation, on a full-time or consistent basis consistent with the [Plan's] definition. I render my opinion based on the cumulative effect of Ms. Scott's above described objectively diagnosed medical problems, the subjective symptoms she suffers, and my knowledge of her education and work history. It is my opinion that she has been so disabled since she ceased working in 1999 and that she will remain so indefinitely into the future.

(Id. at 564.) The three MRIOA reviewers again opined that Scott's impairments did not preclude her from working in "any occupation." (Def. Mem. Supp. J. 13-15.) Consequently, the Plan Administrator upheld its decision to deny Scott LTD benefits. (Id. at 13.) In its April 12, 2010 letter to Scott, the Plan Administrator justified its final decision, writing:

> We note that Dr. Riley is Ms. Scott's treating family physician . . . and is the only examining physician who had opined that Ms. Scott was disabled from even sedentary work as of November 1, 2008.
>
> . . . .

6

> The substantial weight of the medical documentation provided by Ms. Scott, her treating physicians, and by the independent physician reviewers continue to support the conclusion that as of the date her continued LTD benefits were denied, Ms. Scott was not continuously disabled from work as required by the Plan.
>
> We note that the diagnoses of rheumatoid arthritis and reflex sympathetic dystrophy were never substantiated by objective medical evidence, as we had previously observed in our letter dated September 28, 2009. Notably, Ms. Scott was never diagnosed or treated by a mental health provider, as required by the Plan, for the mental health condition that she and Dr. Riley state contributed to her disability status. Considered together, these conditions, none of which have been substantiated with objective medical evidence, do not constitute an impairment so severe that it precludes Ms. Scott from performing sedentary work. We also note that although Dr. Riley expresses concern with respect to Ms. Scott's ability to perform sedentary work, given the medications she uses, his office and records do not evidence the cognitive changes that he told the independent physician reviewer may impact her functional capacity.

(R. at 59, 61-62.) Upon the Plan Administrator's final determination to terminate Scott's LTD benefits, the court granted the parties' joint motion to lift the court's stay. (Order, Apr. 21, 2010.) The parties subsequently filed memoranda in support of judgment. This matter is now ripe for consideration.

## II. Discussion of the Law

### A. Standard of Review

"When . . . an ERISA benefit plan vests with the plan administrator the discretionary authority to make eligibility determinations for beneficiaries, a reviewing court evaluates the plan administrator's decision for abuse of discretion." Williams v. Metro. Life Ins. Co., 609 F.3d 622, 629-30 (4th Cir. 2010). Employing this deferential standard, the court will not disturb the determination of the plan administrator if it is reasonable, even if the court, exercising independent judgment, would have reached an alternative decision. Donovan v. Eaton Corp.

Long Term Disability Plan, 462 F.3d 321, 326 (4th Cir. 2006). A plan administrator's decision is reasonable, and will be upheld, if it is the product "of a deliberate, principled reasoning process and if it is supported by substantial evidence." Bernstein v. CapitalCare, Inc., 70 F.3d 783, 788 (4th Cir. 1995) (internal quotation marks omitted).

The Fourth Circuit has enumerated eight nonexclusive factors that guide the court in reviewing the reasonableness of an administrator's decision. See Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan, 201 F.3d 335, 342-43 (4th Cir. 2000). These factors include:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

Id. With these principles in mind, the court considers the evidence presented.

### B. Denial of LTD Benefits

The facts before the court are analogous to those the Fourth Circuit confronted in Donovan. In Donovan, the Fourth Circuit affirmed the district court's reversal of Eaton's denial of LTD benefits to one of its employees. After Eaton paid Donovan LTD benefits for ten years, Eaton denied Donovan's claim for benefits, maintaining that she failed to produce objective evidence showing that she had a covered disability. 462 F.3d at 324-26. The court found that Eaton's decision was unreasonable because of the administrator's "wholesale disregard" of evidence that supported Donovan's claim. Id. at 329. Eaton relied heavily upon a statement by Donovan's physician that suggested that Donovan's disabilities did not preclude her from

8

performing sedentary work. Id. However, Eaton failed to adequately consider a subsequent statement made by the same physician opining that Donovan was completely and totally disabled. Id. Instead, Eaton's peer reviewers "ignore[d]" and "disregarded" evidence that was favorable to Donovan's claim. Id. at 327. The court concluded that Eaton's failure to adequately address the favorable evidence to Donovan constituted an abuse of discretion. Id. at 329; see also White v. Eaton Corp. Short Term Disability Plan, No. 07-2010, 2009 WL 136916, at **4-5 (4th Cir. Jan. 21, 2009) (unpublished) (finding, as in Donovan, that Eaton's failure to elaborate on and wholesale disregard of evidence that supported the claimant was an abuse of discretion).

In the case at bar, the evidence proffered by the Claims Administrator for initially terminating Scott's LTD benefits–the physical capacity evaluation, Dr. Lumpkins' review, and the Transferable Skills Analysis and Labor Market Survey–relies upon Dr. Riley's purported belief that Scott could perform sedentary work. (R. at 114.) Eaton acknowledges that the physical capacity evaluation form completed by Dr. Riley on May 23, 2008, is unclear insofar that Dr. Riley indicated that Scott was capable of sitting, standing and walking for eight hours each day while also indicating that Scott was capable of working zero hours per day. (Def. Mem. Supp. J. 6; R. at 244.) However, Eaton claims that any confusion was resolved in a subsequent teleconference with Dr. Riley during which he indicated that Scott could perform sedentary work. (Def. Mem. Supp. J. 6.) To the extent that the physical capacity evaluation form that Dr. Riley completed created confusion regarding Dr. Riley's position on Scott's ability to work, his subsequent October 17, 2008 letter to Eaton unequivocally established his opinion that Scott's impairments precluded her from performing sedentary work. In the letter, Dr. Riley expressly states that Scott "is completely and totally disabled from performing any job on a full time basis.

The severity of her medical problems, as well as the side effects of the chronic medication that she takes, prevents her from being able to seek gainful employment." (R. at 517.) Further, Dr. Riley's letter directly contradicts the Claims Administrator's October 7, 2008 letter to Scott in which it justified its determination by stating: "Based on the diagnosis from Dr. Riley, his recommendations for sedentary work with restrictions are appropriate." (Id. at 114.) Given that each of the Claims Administrator's stated reasons for denying Scott LTD benefits relied upon the mistaken premise that Dr. Riley believed Scott could perform sedentary work, the court finds that Eaton acted unreasonably when it failed to consider Dr. Riley's subsequent and unequivocal medical opinion of Scott's capabilities. Instead of meaningfully discussing the impact that Dr. Riley's subsequent letter had on the conclusion that Scott could perform sedentary work, Eaton turned to hired peer reviewers in an attempt to reconcile its initial determination that Scott no longer had a covered disability.

Moreover, the record indicates that subsequent reviewers for Eaton seemingly ignored Dr. Riley's October 17, 2008 letter. Almost a year after the Plan Administrator received Dr. Riley's letter, one of Eaton's anonymous reviewers included in Scott's case history the physical capacity evaluation Dr. Riley completed, and he notes from the evaluation that Dr. Riley "indicates that patient is capable of sitting, standing, and walking for eight hours each day. A revised report of [Dr. Lumpkins] dated August 5, 2008 indicates that in a telephone conference with Dr. Riley the doctor indicated the patient could do modified work in a low stress environment." (Id. at 599.) Reliance by an anonymous reviewer on a form that contained a facial inconsistency without addressing Dr. Riley's subsequent letter stating that Scott was completely disabled fails to constitute the "deliberate, principled reasonable process" which ERISA mandates. Bernstein v.

10

CapitalCare, Inc., 70 F.3d 783, 788 (4th Cir. 1995). Such "wholesale disregard" of evidence favorable to the employee beneficiary is tantamount to what the Fourth Circuit held in Donovan to be unreasonable. Based on the foregoing, the court finds that Eaton was unreasonable in failing to consider evidence favorable to Scott and in relying on peer reviewers who ignored evidence favorable to Scott.

After reviewing the record, the court also finds that the Plan Administrator failed to adequately address the impact of Scott's medication regimen on her ability to work. As noted above, Dr. Riley's conclusion that Scott was completely and totally disabled hinged, in part, on the effect of the narcotic medication Scott was prescribed. (R. at 211, 227, 229, 517.) After Scott's initial appeal of Eaton's denial of LTD benefits, the Claims Administrator hired three peer reviewers to examine Scott's file. (Def. Mem. Supp. J. 8.) Reports by Dr. Al-Shathir, Dr. Goldman, and Dr. Payne, each of whom reviewed Scott's medical records for Eaton, failed to meaningfully and substantively address Dr. Riley's concern regarding the impact of Scott's narcotic medication on her ability to work. (R. at 517.) Eaton submits that its reviewers noted Scott's medication use in their reports, and therefore, considered her medication use in their review and ultimate conclusion that Scott could perform sedentary work. (Def. Mem. Supp. J. 8-9.) Dr. Al-Shathir, however, failed to mention the side effects of Scott's pain medication throughout his report. (R. at 547-50.) Dr. Payne stated in his report that "Dr. Riley has informed me that [Scott] is on long-term scheduled opioids, but has tolerated these agents well with no evidence of diversion and good compliance in their utilization." (Id. at 553.) In addition, Dr. Payne's report failed to address the side effects of Scott's prescribed medication and the impact that they would have on her ability to work. (Id.) Rather, Dr. Payne explicitly examined Scott's

11

file from a "rheumatology perspective."  (Id.)  The third peer reviewer, Dr. Goldman, also included Scott's use of pain medication in his report.  (Id. at 556.)  Dr. Goldman, however, neither analyzed nor challenged Dr. Riley's opinion of the disabling side effects of Scott's narcotics; rather he analyzed Scott's impairments from a purely psychiatric perspective.  (R. at 131, 555-58.)  Relying on the reports from the three hired peer reviewers, Eaton upheld its initial determination to deny Scott continued benefits.  (Id. at 128-32.)  In its February 11, 2009 letter to Scott indicating its decision to uphold the denial of her LTD benefits, Eaton summarized the conclusions of its reviewing doctors that Scott's physical and psychiatric impairments did not preclude her from working in any occupation as the Plan required for an employee to receive LTD benefits.  (Id.)  Eaton's letter, however, did not address the impact of Scott's narcotic medication, a significant component of Dr. Riley's conclusion that Scott was unable to work.  Further, it did not address Dr. Riley's October 17, 2008 letter stating that Scott was incapable of performing sedentary work despite the fact that the Claims Administrator justified its initial decision based on Dr. Riley's alleged earlier opinion that Scott was capable of performing sedentary occupations.  Eaton, as it did in Donovan and White, ignored evidence favorable to its employee.  The court finds that Eaton's failure to elaborate upon and consider the impact of Scott's medication on her ability to work, a central component to Dr. Riley's conclusion that Scott was completely disabled, constitutes an abuse of discretion.

Finally, after Scott appealed the denial of her benefits under the Plan for a second time, the Plan Administrator submitted Scott's claim file to three anonymous MRIOA peer reviewers to evaluate Scott's impairments.  (Def. Mem. Supp. J. 10; R. at 565-601.)  On September 15, 2009, a psychiatrist, a neurologist, and a physician with a focus on physical

medicine/rehabilitation from MRIOA reviewed Scott's file. Although each of the reviewers attempted to thoroughly counter Dr. Riley's diagnoses–focusing on the extent of Scott's limitations caused by her rheumatoid arthritis and chronic pain–the reviewers failed to evaluate the role of Scott's pain medication on her ability to work. (R. at 565-601.) Despite Dr. Riley's recurring concern regarding the impact of Scott's narcotics use, the Plan Administrator and its paid peer reviewers ignored its importance. The only anonymous reviewer to acknowledge the side effects of Scott's pain medication noted Dr. Riley's concern that Scott's narcotics use may cause "cognitive changes," and he included Dr. Riley's belief that "it would take discontinuation of the pain medications to get [Scott] back to work." (Id. at 577, 579.) The anonymous reviewer then stated: "Dr. Riley indicated that he believed that Ms. Scott would be able to perform [a] sedentary job not requiring fine manipulation in the hands if she was not on pain medications. He indicated that it would take discontinuation of the pain medications to get her back to work in this circumstance." (Id. at 579.) The anonymous reviewer concluded that Scott was not completely disabled, reasoning: "Dr. Riley noted that it is only the use of pain medication that is preventing Ms. Scott from returning to work. The discussion suggested that there were no physical reasons why Ms. Scott could not return to work." (Id.) The anonymous reviewer did not address Dr. Riley's concern regarding the effect of Scott's medication regimen on her ability to work. Rather, the reviewer simply ignored the side effects of the medication and predicated the assessment of Scott's capabilities upon only an analysis of Scott's physical impairments.

A review of the reports from the MRIOA evaluators indicates that Eaton's reviewers collectively failed to evaluate and consider the disabling side effects of Scott's narcotic medication. By failing to consider the side effects of Scott's pain medication, the Plan

Administrator and its reviewers have disregarded the terms of the Plan. The Plan requires claimants to substantiate a disability by producing objective evidence showing that the claimant has a covered disability. (R. at 38.) Further, the Plan specifically states that "medications and/or treatment plan" constitute objective evidence of disability. (Id.) By failing to address Dr. Riley's contention regarding the disabling effect of Scott's prescribed medication, the Plan Administrator disregarded the plain language of the Plan.

The court is cognizant of the significant discretion afforded to the Plan Administrator in making the determination of whether benefits are owed under the Plan, and it does not disturb Eaton's final decision lightly. However, the court is charged with reviewing Eaton's decisionmaking process to ensure that it does not contravene ERISA's protections. When faced with a record in which the Plan Administrator ignored relevant evidence favorable to the employee, the court has no choice but to conclude that the Plan Administrator abused its discretion in determining whether the employee was owed benefits.[5]

---

[5] Because Eaton funds and administers the Plan, the court recognizes the existence of a conflict of interest. The United States Supreme Court has stated that a conflict of interest "should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an . . . administrator has a history of biased claims administration." Metro. Life Ins. Co. v. Glenn, 128 S. Ct. 2343, 2351 (2008). Scott argues that Eaton has shown a history of biased claims, and therefore, the conflict of interest factor under Booth should be given significant weight in evaluating Eaton's decisionmaking process. (Pl. Mem. Supp. J. 22, 33.) The court notes that the conflict of interest factor weighs in favor of Scott. However, because the court's holding that Eaton abused its discretion rests primarily upon Eaton's wholesale disregard of evidence favorable to Scott, the court does not address how much weight the conflict of interest factor should be given.

It is therefore

**ORDERED** that Eaton's decision denying Scott LTD benefits is reversed; it is further

**ORDERED** that the Plan pay LTD benefits to Scott.

**IT IS SO ORDERED.**

                                                s/Henry M. Herlong, Jr.
                                                Senior United States District Judge

Greenville, South Carolina
September 3, 2010